UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| SAMANTHA DEN, Individually and On Behalf of All Others Similarly Situated, | ) <br> ) Civ. No. 04cv10310 DPW <br> ) |
| Plaintiff, | ) CLASS ACTION <br> ) |
| v. | ) AMENDED COMPLAINT FOR <br> ) VIOLATION OF THE |
| SONUS NETWORKS INC., HASSAN M. AHMED and STEPHEN J. NILL, | ) FEDERAL SECURITIES LAWS <br> ) <br> ) |
| Defendants. | ) DEMAND FOR JURY TRIAL <br> ) |

---

## INTRODUCTION

1.  This is an action on behalf of purchasers of Sonus Networks Inc. ("Sonus" or the "Company") publicly traded securities during the period from April 9, 2003 to February 12, 2004 (the "Class Period") seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Sonus Networks, Inc. is a provider of voice infrastructure solutions for the new public network. The Company's products are a new generation of carrier-class switching equipment and software that enable voice services to be delivered over packet-based networks. By enabling voice traffic to be carried over these packet-based networks, the Company's products will accelerate the convergence of voice and data into the new public network. The Company's suite of voice infrastructure solutions includes the GSX9000 Open Services Switch, the Insignus Softswitch and the Sonus Insight Management System.

3.  During the Class Period, defendants issued numerous statements to the market concerning the Company's performance and financial results, which failed to disclose and/or misrepresented the following adverse facts among others: (a) that defendants improperly and untimely recognized revenue on certain customer transactions; (b) that defendants violated Generally Accepted Accounting Principles ("GAAP") and the Company's own internal policies[1] concerning timing of revenue recognition; and (c) as a result of these misstatements and/or omissions, net income and earnings per share information reported during the Class Period were materially false and misleading.

4.  On February 11, 2004, Sonus surprised the market, announcing that millions of dollars in transactions included in its 2003 results may have been improperly booked and may need to restate those results, such that its 2003 financial statements were not a fair presentation of Sonus' results and not presented in accordance with Generally Accepted Accounting Principles ("GAAP") and SEC rules.

5.  The market's reaction to this disturbing news was swift and severe, causing shares of Sonus to plummet, from $6.69 to $5.02 per share, or 24.9% in extraordinarily heavy trading.

---

[1] Sonus' revenue recognition policy is contained in its Form 10Q for the period ending September 30, 2003. It states: "Sonus recognizes revenues from product sales to end users, resellers and distributors upon shipment, provided there are no uncertainties regarding acceptance, persuasive evidence of an arrangement exists, the sales price is fixed or determinable and collection of the related receivable is probable. If uncertainties exist, Sonus recognizes revenues when those uncertainties are resolved. In multiple element arrangements, in accordance with Statement of Position 97-2 and 98-9, Sonus uses the residual method when vendor-specific objective evidence does not exist for one of the delivered elements in the arrangement. Service revenues are recognized as the services are provided. Revenues from maintenance and support arrangements are recognized ratably over the term of the contract. Amounts collected prior to satisfying the revenue recognition criteria are reflected as deferred revenue. Warranty costs are estimated and recorded by Sonus at the time of product revenue recognition."

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act") [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. § 240.10b-5].

7. This Court has jurisdiction of this action pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. §§ 1331 and 1337.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391 (b) and (c). Sonus maintains its headquarters in this District and many of the acts and wrongs complained of herein occurred in this District.

9. In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ National Market (the "NASDAQ"), a national securities exchange.

## THE PARTIES

7. Plaintiff, Samantha Den, purchased Sonus publicly traded securities as detailed in the attached Certification and was damaged thereby.

8. Defendant Sonus Networks, Inc. ("Sonus") is a Delaware corporation with its principal place of business located at 5 Carlisle Road, Westford, Massachusetts 01886. Sonus is a provider of voice infrastructure solutions for the new public network. The Company's products are a new generation of carrier-class switching equipment and software that enable voice services to be delivered over packet-based networks. By enabling voice traffic to be carried over these packet-based networks, the Company's products claim to accelerate the convergence of

voice and data into the new public network. The Company's suite of voice infrastructure solutions includes the GSX9000 Open Services Switch, the Insignus Softswitch and the Sonus Insight Management System.

9. Defendant Hassan Ahmed, Ph.D. ("Ahmed"), was President and Chief Executive Officer during the Class Period. Ahmed assisted in the preparation of the false financial statements and repeated the contents therein to the market.

10. Defendant Stephen J. Nill ("Nill") was the Chief Financial Officer of Sonus during the Class Period. Nill assisted in the preparation of the false financial statements and repeated the contents therein to the market and signed the Form 10-Qs verifying the accuracy of the financial statements which the Company now admits were false.

11. Defendants Ahmed and Nill are the "Individual Defendants." They are liable for the false statements pleaded below, as those statements were "group-published" information.

12. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

13. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the

collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Sonus, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NASDAQ, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained

therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their executive and managerial positions with Sonus, each of the Individual Defendants had access to the adverse undisclosed information about Sonus' business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Sonus and its business issued or adopted by the Company materially false and misleading.

16. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

17. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Sonus common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Sonus' business, sales practices, operations and the intrinsic value of Sonus common stock; (ii) allowed defendants to successfully complete two public offerings of Sonus stock generating proceeds of approximately $182 million for the Company; and (iii) caused plaintiff and other members of the Class to purchase Sonus common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

18.  Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Sonus publicly traded securities (the "Class") on the open market during the Class Period. Excluded from the Class are defendants, directors and officers of Sonus and their families and affiliates.

19.  The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. During the Class Period Sonus had 244,451,558 shares of stock outstanding, owned by thousands of persons.

20.  There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a) Whether the 1934 Act was violated by defendants;

(b) Whether defendants omitted and/or misrepresented material facts;

(c) Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and

(d) Whether defendants knew or recklessly disregarded that their statements were false and misleading.

## SUBSTANTIVE ALLEGATIONS

21.  The Class Period begins on April 9, 2003. On this date, the Company issued a press release entitled "Sonus Networks Reports 2003 First Quarter Results." The press release stated in part:

7

> Sonus Networks, Inc., a leading provider of voice infrastructure solutions for the new public network, today reported its financial results for the first quarter ended March 31, 2003, in accordance
>
> * * *
>
> Revenues for the first quarter of fiscal 2003 was $16.0 million compared with $12.7 million in the fourth quarter of fiscal 2002. Net loss for the first quarter of fiscal 2003 was $4.4 million or $0.02 per share compared with a net loss for the fourth quarter of fiscal 2002 of $12.8 million or $0.07 per share. Revenues for the first quarter of fiscal 2002 were $21.2 million and the net loss for the first quarter of 2002 was $16.2 million or $0.09 per share.
>
> "Our financial results for the first quarter reflected good progress toward our business objectives," said Hassan Ahmed, president and CEO, Sonus Networks. "We grew our revenues 27 percent over last quarter, and by continuing to manage our business with precision, we further narrowed our net loss. In Q1, we also continued to add new customers around the globe and made important additions to our product family."

22.     On April 24, 2003, Sonus completed a public offering of 20,000,000 shares of its common stock at $3.05 per share, resulting in net proceeds of $56,730,000 after deducting costs of $4,270,000.

23.     On July 10, 2003, the Company issued a press release entitled "Sonus Networks Reports 2003 Second Quarter Financial Results." The press release stated in part:

> Sonus Networks, Inc., a leading provider of voice infrastructure solutions for the new public network, today reported its financial results for the first quarter ended June 30, 2003.
>
> ** *
>
> Revenues for the second quarter of fiscal 2003 were $21.4 million compared with $16.0 million for the first quarter of fiscal 2002. Net loss for the second quarter of fiscal 2003 was $3.2 million or $0.01 per share compared with a net loss for the first quarter of fiscal 2003 of $4.4 million or $0.02 per share and a net loss of $17.8 million or $0.09 per share for the second quarter of fiscal 2002.
>
> Revenues for the first six months of fiscal 2003 were $37.4 million compared with $42.5 million in the same period last year. Net loss for the first six months of fiscal 2003 was $7.6 million or $0.04 per share compared with a net loss for the first six months of fiscal 2002 of $34.0 million or $0.18 per share.

> "We are pleased with the progress that we made in the second quarter, particularly with our 33% sequential revenue growth," said Hassan Ahmed, president and CEO, Sonus Networks. "We executed across all areas of the business – broadening and strengthening our customer base, expanding our leading product offering, bolstering our balance sheet and advancing our drive to profitability."

24. On September 23, 2003, Sonus completed a public offering of 17,000,000 shares of its common stock at $7.75 per share, resulting in net proceeds of $126,025,000 after deducting offering costs of $5,725,000.

25. On October 8, 2003, the Company issued a press release entitled "Sonus Networks Reports 2003 Third Quarter Financial Results." The press release stated in part:

> Sonus Networks, Inc., a leading provider of voice infrastructure solutions for the new public network, today reported its financial results for the third quarter ended September 30, 2003 in accordance with U.S. generally accepted accounting principles (GAAP).
> Revenues for the third quarter of fiscal 2003 were $28.6 million compared with $21.4 million for the second quarter of fiscal 2003 and $7.4 million for the third quarter of fiscal 2002. Net income for the third quarter of fiscal 2003 was $1.2 million or $0.01 per diluted share compared with a net loss of $21.6 million or $0.11 per diluted share for the third quarter of fiscal 2002.
> Revenues for the first nine months of fiscal 2003 were $66.0 million compared with $49.9 million in the same period last year. Net loss for the fist nine months of fiscal 2003 was $6.4 million or $0.03 per diluted share compared with a net loss for the fist nine months of fiscal 2002 of $55.7 million or $0.30 per diluted share.
> "This was a strong quarter for Sonus Networks, our fourth consecutive quarter of revenue growth," said Hassan Ahmed, president and CEO, Sonus Networks. "Our revenues grew 34% sequentially to $28.6 million, reflecting increased market demand for packet telephony and the expanding number of customers who have adopted Sonus' solutions. We achieved an important milestone in reporting our first quarterly profit on a GAAP basis. Additionally, we bolstered our balance sheet to capitalize on the opportunity ahead, adding $126 million to our cash and marketable securities through a common stock offering in September."

9

26. On January 20, 2004, the Company issued a press release announcing the Company postponed the release of its fourth quarter and full year 2003 financial results pending the completion of its 2003 audit.

27. On February 11, 2004, after the markets closed, the Company issued a press release that provided additional information regarding the delay in reporting its fourth quarter and full fiscal year financial results for the year ended December 31, 2003. The press release stated in part:

> Sonus Networks today provided additional information regarding the delay in reporting its fourth quarter and full fiscal year financial results for the year ended December 31, 2003. In connection with the year-end audit, Sonus Networks and its independent auditors have identified certain issues, practices and actions of certain employees relating to both the timing of revenue recognized from certain customer transactions and to certain other financial statement accounts, which may affect the Company's 2003 financial statements and possibly financial statements for prior periods.

28. In reaction to the news, on February 12, 2004, shares of Sonus fell sharply, down 24.9% from the previous day's close.

## SONUS' FALSE FINANCIAL REPORTING DURING THE CLASS PERIOD

29. The 2003 results as reflected in ¶¶21-28 above were included in Form 10-Qs filed with the SEC. The results were also included in press releases disseminated to the public.

30. Sonus announced that transactions included in its 2003 results were improperly accounted for and that the reported earnings for 2003 will have to be restated. Such restatements will remove millions in improperly reported revenues, such that its 2003 financial statements were not a fair presentation of Sonus' results and were presented in violation of GAAP and SEC rules.

31. GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnote or other disclosure. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. See 17 C.F.R. §210.10-01(a).

32. In Sonus' 2002 Form 10-K it represented that it recognized revenue in accordance with GAAP.

33. Pursuant to GAAP, which describes the accounting for revenues, revenue should not be recognized unless there is persuasive evidence of an agreement, collection is probable and delivery has occurred.

34. During the Class Period, Sonus improperly recognized revenue even though these conditions did not exist.

35. The fact that Sonus may have to restate its financial statements for 2003 is an admission that the financial statements originally issued were false and that the overstatement of revenues and income was material. Pursuant to GAAP, as set forth in Accounting Principles Board Opinion ("APB") No. 20, the type of restatement undertaken by Sonus will be to correct for material errors in its previously issued financial statements. See APB No. 20, 7-13. The restatement of past financial statements is a disfavored method of recognizing an accounting change as it dilutes confidence by investors in the financial statements, and it makes it difficult to compare financial statements. See APB No. 20, 14. Thus, GAAP provides that financial

11

statements should only be restated in limited circumstances, i.e., when there is a change in the reporting entity, there is a change in accounting principles used or to correct an error in previously issued financial statements. Sonus' possible restatement will not be due to a change in reporting entity or a change in accounting principle, but rather to errors in previously issued financial statements. Thus, the possibility of a restatement may be seen as an admission by Sonus that its previously issued financial results and its public statements regarding those results were false.

36.     Due to these accounting improprieties, the Company presented its financial results and statements in a manner which violated GAAP, including the following fundamental accounting principles:

(a) The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB 26 No. 28, 10);

(b) The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, 34);

(c) The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASB Statement of Concepts No. 1, 40);

(d) The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that

management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, 50);

(e) The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated. Investors and creditors often use information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, 42);

(f) The principle that financial reporting should be reliable in that it represents what it purports to represent was violated. That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, 58-59);

(g) The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, 79); and

(h) The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, 95, 97).

37. Further, the undisclosed adverse information concealed by defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities

analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## NO SAFE HARBOR

38. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false forward-looking statements pleaded in this Complaint. The safe harbor does not apply to Sonus' allegedly false statements made during the Class Period. None of the written forward-looking statements made were identified as forward-looking statements, nor was it stated that actual results "could differ materially from those projected." Nor did meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements accompany those forward-looking statements. Each of the forward-looking statements alleged herein to be false was authorized by an executive officer of Sonus and was actually known by each of the Individual Defendants to be false when made.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5 Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) Employed devices, schemes, and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make statements not misleading; or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Sonus publicly traded securities during the Class Period.

42. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Sonus publicly traded securities. Plaintiff and the Class would not have purchased Sonus publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

43. As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Sonus publicly traded securities during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. The executive officers of Sonus prepared, or were responsible for preparing, the Company's press releases and SEC filings. The Individual Defendants controlled other employees of Sonus. Sonus controlled the Individual Defendants and each of its officers and

executives and all of its employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER

**WHEREFORE**, plaintiff prays for judgment as follows: declaring this action to be a proper class action; awarding damages, including interest; and such other relief as the Court may deem proper.

DATED: February 25, 2004

Respectfully submitted,

**SHAPIRO HABER & URMY LLP**

*[signature]*

Theodore Hess-Mahan (BBO#557109)
75 State Street
Boston, MA 02109
Tel: (617) 439-3939
Fax: (617) 439-0134

**GOODKIND LABATON RUDOFF & SUCHAROW LLP**
Jonathan M. Plasse
100 Park Avenue
New York, New York 10017
Tel: (212) 907-0700
Fax: (212) 818-0477